FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2014 JAN 21 P 1:31
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

MARCUS BARRINGTON,

Petitioner,

v.

CIVIL ACTION NO.: CV213-037

SUZANNE HASTINGS, Warden.

Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Marcus Barrington ("Barrington"), who is currently incarcerated at the Federal Correctional Institution-Satellite Low Camp in Jesup, Georgia, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent filed a Return, and Barrington filed a Traverse. Based on these pleadings, the undersigned recommended that Barrington's petition be granted. Respondent filed a Motion for Reconsideration, which the undersigned granted by Order dated November 18, 2013. The undersigned directed the parties to submit any further pleadings and/or documentation for the Court's determination. (Doc. No. 23). Barrington and Respondent both filed responses to this Order. For the reasons which follow, Barrington's petition should be **DENIED**.

## STATEMENT OF THE CASE

Barrington is serving a 84-month aggregate sentence after his convictions for: conspiracy to commit wire fraud using a protected computer, in violation of 18 U.S.C. §§ 371 and 1349; defrauding using a protected computer, in violation of 18 U.S.C. §§

1030(a) and (c)(3)(A); aggravated identity theft, in violation of 18 U.S.C. § 1028(a); and aiding and abetting, in violation of 18 U.S.C. § 2. Barrington has a projected release date of May 27, 2015, via good conduct time release. (Resp't's Exh. 1, pp. 2-3).

Barrington asserts that he has been denied admittance to the Residential Drug Abuse Program ("RDAP") improperly. Barrington alleges that the Bureau of Prisons arbitrarily violated its policy for RDAP participation concerning the eligibility of inmates seeking to participate in the RDAP.

Respondent contends that the Drug Abuse Program Coordinator ("DAPC"), Dr. Joshua Childers, exercised his discretion in determining that Barrington did not qualify for entry into the RDAP. Respondent also contends that Childers' determination that Barrington did not qualify for the RDAP falls within the language of the applicable Program Statement.

## DISCUSSION AND CITATION TO AUTHORITY

Barrington avers that he is challenging the BOP's interpretation of 18 U.S.C. § 3621 and Program Statement 5330.11, as this interpretation requires that an inmate prove an excessive or abusive history with substances to be eligible for entry into the RDAP. Barrington asserts that he submitted a request for entry into the RDAP and was denied entry. Barrington asserts that he was told a review of his Pre-Sentence Investigation Report ("PSI") did not establish a pattern of substance abuse or dependence and that an interview was not warranted. Barrington states that he was also informed that he could submit additional documentation in support of his request for entry into the RDAP. Barrington alleges that he then provided Childers with a fabricated report detailing Barrington's alcohol and marijuana abuse and was disciplined

2

as a result. Barrington also alleges that Childers told him that, if he presented documents to support his request for entry into the RDAP, he could not deny Barrington treatment. To this end, Barrington submitted copies of his sentencing transcript, in which he explained to the sentencing judge that he minimized the extent of his alcohol abuse problem with the probation officer for fear of being viewed worse and receiving a harsher sentence. Barrington also submitted copies of the sentencing judge's recommendation that Barrington participate in the 500 hour RDAP based on his in-court admission to a history of alcohol abuse. Barrington contends that Childers interviewed him, yet he (Barrington) was not allowed to explain how his alcohol abuse became worse. Barrington also contends that Childers informed him that he was still ineligible for entry into the RDAP. Barrington also contends that it is only "use" that is required under the Program Statement, not "abuse", to meet the requirements for the RDAP.

Respondent asserts that an inmate's eligibility for the RDAP is solely within the Bureau of Prisons' ("BOP") discretion and that an inmate has no constitutional right to participate in this program. Respondent also asserts that Childers denied Barrington's request for entry into the RDAP because Barrington did not present a verifiable substance abuse problem. Respondent contends that Childers asked Barrington about his supporting documentation, and Barrington stated that he drank alcohol and smoked marijuana on a daily basis. According to Respondent, Barrington's statements were inconsistent with the written documentation he submitted. Respondent asserts that Childers exercised the discretion afforded him under Program Statement 5330.11 in determining that Barrington did not warrant a diagnosis of a substance abuse problem. Respondent also asserts that the only documentation Barrington has offered in support

of his alcohol dependency claim is the statement by his attorney that Barrington "could use the help" and "could benefit" from the RDAP. (Doc. No. 25, p. 3).

I. **The Residential Drug Abuse Program ("RDAP")**

18 U.S.C. § 3621(b) requires that the BOP "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." This treatment program carries with it an early release component, wherein the BOP has discretion to reduce the sentence of an inmate by up to twelve months if the inmate was convicted of a nonviolent offense and completes an RDAP during his current confinement. 18 U.S.C. § 3621(e)(2)(B). The majority of the litigation surrounding 18 U.S.C. § 3621(b) pertains to a prisoner's eligibility for early release after completion of the RDAP. Conversely, the issue of eligibility for entry into the RDAP has resulted in far less litigation, and a review of what does exist reveals that there is simply no well-settled controlling case law on the subject.

The statute and its accompanying federal regulations indicate that the BOP has the sole authority to determine which prisoners should participate in the RDAP. Congress clearly stated that the BOP is to provide substance abuse treatment to those prisoners whom "the Bureau determines" have treatable substance abuse conditions. Federal regulations likewise indicate that the BOP has substantial discretion and authority to assign prisoners to substance abuse programs. See 28 C.F.R. § 550.53 (allowing BOP staff to make appropriate drug education/treatment referral following an interview and record review for a verifiable substance use disorder); 28 C.F.R. § 550.53(e) (the DAPC decides whether to place inmates in RDAP).

## II. Criteria of a "Substance Abuse Problem"

The BOP's interpretation of a statute that it is entrusted to administer is entitled to considerable weight unless it is arbitrary, capricious, or contrary to the statute. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984). Moreover, discretion is likewise appropriate even when "the Bureau's interpretation appears only in a 'Program Statemen[t]' – an internal guideline – rather than in 'published regulations subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment.'" Reno v. Koray, 515 U.S. 50, 61 (1995) (citation omitted). However, despite its broad discretion over the substance abuse treatment program and similar statutorily-created programs, the BOP must act within the confines of its statutory authority in order to survive judicial review. It is clear that 18 U.S.C. § 3621(b) does not set forth any criteria to guide the BOP's determination of whether an inmate has a "substance abuse problem." Thus, the question here is whether the specific criteria used by the BOP to make the determination are permissible.

BOP Program Statement 5330.11 establishes that an inmate may be admitted to the RDAP by making a request to a staff member, usually a member of the RDAP unit team or the DAPC. Program Statement 5330.11, Ch. 2, § 2.5.8. Upon completion of the psychology intake screening, the psychologist "will refer inmates with a substance use history and an interest in treatment to the institution's DAPC. The DAPC will further screen the inmate for the RDAP or for referral to the non-residential drug abuse program or the drug education course." Id. at § 2.5.8(d)(1). If the DAPC assigns a RDAP referral, "the [Drug Treatment Specialist] will review an inmate's Central File and other collateral sources of documentation to determine" whether: an inmate has

5

sufficient time remaining on his sentence (usually 24 months); there is documentation verifying the inmate's use of specific drugs, including alcohol; and a pattern of substance abuse or dependence is established through verification. Id. at § 2.5.8(d)(2). Examples of "other collateral documentation" can include documentation to support a substance abuse disorder within the 12-month period before the inmate's arrest; documentation from a probation officer with information verifying the inmate's substance abuse problem within the 12-month period before the inmate's arrest; or documentation from a substance abuse treatment or medical provider who diagnosed and treated the inmate for a substance abuse disorder within the 12-month period before the arrest. Id..[1] This Program Statement contains a note that "Recreational, social, or occasional use of alcohol and/or other drugs that does not rise to the level of excessive or abusive drinking does not provide the required verification of a substance use disorder. Any verifying documentation of alcohol or other drug use must indicate problematic use[.]" Id..

In denying Barrington admission to the RDAP, Childers noted that he could not diagnose Barrington with a substance abuse problem. Childers made this non-diagnosis based on "Barrington's dishonest, self-serving, and differing report(s) of his alcohol and drug use[.]" (Childers Decl., ¶ 19). Childers noted that Barrington's PSI stated that, "'the Defendant reports that he consumes alcohol and that he has no problems associated with his use. He reports using marijuana experimentally on one occasion. According to the defendant . . ., he has never received substance abuse treatment.'" (Id. at ¶ 14) (quoting PSI, p. 13). Childers noted that Barrington's PSI did

---

[1] These are only examples and are not meant to be exhaustive of "collateral sources of documentation."

not establish a pattern of substance abuse or dependence, but he could provide further documentation to substantiate substance abuse in the 12-month period before his arrest or enroll in the Non-Residential Drug Program ("NRDAP") for treatment. (Id. at ¶ 15). Childers noted that he later screened Plaintiff per his request. Childers also noted that Barrington presented a letter from a registered nurse which stated that the nurse evaluated Barrington in January 2007 and diagnosed him with alcohol and marijuana dependence. However, Barrington later admitted that his mother, a registered nurse, provided this letter and that it was fabricated. (Id. at ¶ 16). Childers also noted Barrington provided paperwork from his attorney which indicated that, during sentencing, Barrington informed the sentencing judge that he had not been honest with the probation officer for purposes of the PSI because Barrington would "binge drink" with his college friends on the weekends. (Id. at ¶ 17). Finally, Childers stated that he met with Barrington concerning all of this documentation, at which time Barrington stated that he drank alcohol and smoked marijuana on a daily basis, contrary to the documentation he provided. (Id. at ¶ 18).

### III. Whether the determination that Barrington was not eligible for entry into the RDAP was an abuse of discretion

In determining that Barrington was not eligible for entry into the RDAP, Childers considered the documentation contained in Barrington's central file. This documentation revealed Barrington would "binge drink[ ] on weekends" while he was in college, that this binge drinking "got much worse[ ]", and that Barrington "was afraid to tell probation" about his binge drinking because he had a "fear that the Court would look at him worse and give him a more onerous sentence that he had an alcohol problem[.]" (Case No. 4:08-cr-50, Doc. No. 169, p. 40) (N.D. Fla.). Barrington's attorney stated

AO 72A
(Rev. 8/82)

during the sentencing hearing that Barrington could benefit from a program and asked that Barrington be placed into the 500-hour alcohol and drug abuse program with the BOP. (Id. and at p. 58). The sentencing judge stated that he would recommend to the BOP that Barrington participate in the "in-house intensive treatment plan for alcoholism and/or other substance abuse[ ]" based on his "in-court admission of his history of alcohol abuse." (Id. at p. 66; Doc. No. 151, p. 3).

Program Statement 5330.11 requires an inmate to produce documentation (i.e., statements committed to writing) establishing the inmate's history of substance abuse. Childers considered Barrington's verbal statements that his bingeing was done on a daily basis; however, Childers found these statements to be inconsistent with the documentation Barrington provided as support for his request to be placed in the RDAP. Using the discretion afforded him under Program Statement 5330.11 and by the relevant Federal Regulations, Childers determined that Barrington was not eligible for entry into the RDAP. Childers informed Barrington that he could enter the non-residential treatment program.

Respondent contends that Childers' determination that Barrington is not eligible for entry into the RDAP was not arbitrary or capricious. Rather, Respondent asserts, this determination was based on the documentation Barrington submitted in support of his request for placement into the RDAP. Respondent asserts that Childers stated that Barrington's statements during his interview were inconsistent with the written documentation he submitted.

Childers clarified his determination by submitting a second declaration. In this declaration, Childers stated that inmates may request RDAP review and will be

screened for admission, which is "essentially a document review." (Doc. No. 25-1, p. 1). Childers also stated that the inmate's central file and "other collateral sources of documentation" to determine whether "there is verification that can establish a pattern of substance abuse or dependence." (Id.). There must be independently verifiable documentation, which is defined as information from a probation or parole officer, a social services professional, or a medical provider, of substance abuse for an inmate to move on to the clinical or diagnostic interview. (Id. at pp. 1–2). Childers explained that documentation from family, friends, defense attorneys, or other sources who may have a vested interest in the inmate's case does not qualify as independent documentation of a substance abuse problem. Childers also explained that recreational, social, or occasional use of alcohol or other drugs that does not rise to the level of excessive or abusive "does not provide the required verification of a substance use disorder." (Id. at p. 2). In those instances when an inmate has no verifying documentation, the Drug Treatment Specialist will meet with the inmate and inform him of this. The Drug Treatment Specialist will also inform the inmate that he had several available options, such as volunteering for the NRDAP, seeking documentation from a substance abuse treatment provider previously used, or consenting to have physical proof of substance abuse submitted by medical staff. (Id.). Childers noted that Barrington did not have or provide independently verifiable documentation of a substance abuse problem and did not move on to the clinical interview phase of this process. (Id. and at p. 3). Childers also noted that the sentencing transcript is not considered to be sufficient, independently verifiable documentation of a substance abuse problem under the Program Statement, as the transcript contained comments from Barrington's attorney,

9

not Barrington himself. Although Barrington verbally informed Childers that he drank daily and smoked marijuana, Childers stated that "verbal conversation has no effect on the screening process. It is not independent and/or verifiable information." (Id. at p. 4). Childers declared that Barrington was deemed unqualified for participation in the RDAP in accordance with policy. (Id.).

Childers' determination that Barrington was not qualified for entry into the RDAP was not an abuse of discretion. Childers' determination was based on the verifiable documentation, or the lack thereof, which did not establish a pattern of substance abuse or dependence, as noted in § 2.5.8(2) of Program Statement 5330.11. (Doc. No. 25-1, p. 19). Childers concluded that Barrington did not have any proper documentation to support an assertion that he abused or was dependent upon alcohol or any other drug, yet he was provided with his options to volunteer for the NRDAP or to seek other forms of documentation. This is the requirement set forth in § 2.5.8(3) of this Program Statement. (Id.). Barrington was offered entry into the NRDAP, but he did not want to participate. (Id. at pp. 4–5). The undersigned cannot conclude that Childers' determination that Barrington was not qualified for entry into the RDAP was arbitrary or capricious, as this determination was based on the evidence before him, as applied to the criteria set forth in Program Statement 5330.11. Barrington has presented no evidence that the BOP's interpretation of 18 U.S.C. § 3621 is arbitrary, capricious, or contrary to that statute. Barrington is not entitled to his requested relief.

10

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Barrington's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 21st day of January, 2014.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)